# UNITED STATES BANKRUPTCY COURT
# FOR THE
# WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JUANITA LYNN WATKINS | ) | |
| | ) | CASE NO. 05-11897 |
| Debtor(s) | ) | |
| | ) | |
| DONALD RAY WATKINS | ) | AP NO. 05-1077 |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUANITA LYNN WATKINS | ) | |
| | ) | |
| Defendant(s) | ) | |

## MEMORANDUM-OPINION

This matter came before the Court for trial on the Complaint Objecting to Discharge of Plaintiff Donald Ray Watkins ("Watkins") against Defendant/Debtor Juanita Lynn Watkins ("Debtor").  The Court considered the evidence and testimony submitted at trial and the arguments of counsel.  For the following reasons, the Court will enter judgment in favor of the Debtor.  The following constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## FINDINGS OF FACT

Watkins and the Debtor were married in 1995.  The parties divorced in 2004.  As a result of the divorce the state court entered an Order dated July 12, 2004 which stated, in pertinent part:

> (3) the parties own a house and acreage on Highway 62 in Muhlenberg County.  The property shall be awarded to Petitioner (Debtor).  She will be responsible for the indebtedness . . . .
> . . . . .

> (6) the Petitioner (Debtor) is ordered to pay the Respondent (Watkins) the sum of Forty-two Thousand ($42,000) Dollars over a term of four (4) years beginning on April 7, 2003. The Respondent will execute a Quitclaim Deed conveying his interest in the Highway 62 property to the Petitioner, and the Petitioner will execute a Mortgage in the amount of Forty-two Thousand ($42,000) Dollars, giving the Respondent a lien on the Highway 62 property.

Plaintiff has been on social security disability due to a back injury since 1987. He receives $2,300 per month in social security benefits. His current monthly expenses are as follows: $280 for rent, $75 for utilities, $12 for water, $50 for telephone, $50 for cable, $350 for food, $40 for clothing, $42 for medication, $650 for transportation, $25 for recreation, $76 for life insurance, $50 for car insurance and $150 for a bank loan. He drives a 1998 GMC truck worth approximately $6,800. In addition to social security he also receives a pension from the UMAW of $321 per month. This leaves him an extra $300 per month after expenses.

During the parties marriage, Watkins used $18,000 of his own separate funds to purchase the Highway 62 farm. The parties listed the farm for $280,000 and unsuccessfully tried to sell it for three years. At the time of the divorce the farm had a mortgage of $220,000 in favor of Old National Bank.

Although the state court's Order of July 12, 2004, required him to execute a Quitclaim Deed, he did not do so because the property was already mortgaged and there was no point in Watkins obtaining a new mortgage from the Debtor. He and Debtor agreed to sell the farm for $200,000. There was no pending foreclosure and the bank agreed to waive the deficiency claim.

According to the July 12, 2004 Order, Debtor was to begin making payments to Watkins on the $42,000 debt in April of 2003. Watkins took no action to enforce the Order and Debtor took no steps to execute a mortgage in favor of Watkins. Debtor has paid nothing to Watkins on the debt.

Debtor testified that the $42,000 figure resulted from the $18,000 of separate funds Watkins used to purchase the farm and the remainder represented half of the equity in the property. Debtor arrived at the $42,000 figure based on a $270,000 appraisal of the farm done by the bank and an existing mortgage of $222,000.

When Debtor filed her Chapter 7 Petition on September 1, 2005, it was her intent to keep the farm. However, she lost her job and could no longer make the mortgage payment. The farm went into foreclosure. However, once a purchaser was found, the bank agreed to waive any deficiency claim.

The Debtor has a Bachelor's Degree and a Master's Degree. During the parties' marriage she was employed as an industrial manufacturing consultant and was paid between $80,000 and $143,000 per year. Her job consisted of 50% office work and 50% physical labor. Since the divorce, Debtor suffered a disabling accident when she was thrown from a horse in July 2005. In May 2006, she became entitled to receive social security disability benefits. Since the accident, she had to move in with her parents. Debtor receives $1,798 per month from social security and $400 per month in long term disability benefits. The long term disability benefits will continue for the next two years. She currently pays her parents $550 per month for rent, approximately $50 per month for insurance, $150 per month for utilities, $180 per month for car insurance, $135 per month for her and her college age daughter's cell phones, $363 for medicine, $50 for cable, $250 toward her daughter's living and school expenses and $417 for a vehicle.

Debtor suffered another accident in July 2006 when a horse ran over her. She damaged her spleen. Since that accident she has suffered from severe depression and has no prospects for returning to gainful employment.

## **LEGAL ANALYSIS**

Watkins seeks to have the $42,000 debt owed by Debtor to him declared nondischargeable pursuant to 11 U.S.C. §523(a)(5) and §523(a)(15). Under §523(a)(5), a debt owed to an ex-spouse in connection with a dissolution of a marriage that is in the nature of alimony, maintenance or support is nondischargeable. In re Sorah, 163 F.3d 397, 400 (6th Cir. 1998). The creditor must show that the parties intended to create a support obligation and that the support obligation actually provides necessary support. In re Fitzgerald, 9 F.3d 517, 520 (6th Cir. 1993). If these two tests are met, the court must then determine if the obligation is so excessive as to be "unreasonable under traditional concepts of support." In re Fitzgerald, 9 F.3d at 520. If the court determines it is unreasonable, the court may discharge the debt.

In Sorah, 163 F.3d 397 (6th Cir. 1998), the Sixth Circuit advised that when the bankruptcy court is faced with whether an obligation is in the nature of support it should review the obligation in light of "traditional indicia" of a support award. These factors include (1) a label such as alimony, support or maintenance in the decree or agreement, (2) a direct payment to the former spouse, as opposed to the assumption of third party debt, and (3) payments that are contingent upon such events as death, remarriage, or eligibility for social security benefits. Id. at 401. In this case, the debt was not denominated as alimony, maintenance or support. The provision in the Order at issue was part of the parties' settlement agreement and read into the court's record as part of that agreement.

A review of the state court's Order does not establish that the debt in question was meant to create a support obligation. The debt represents a return to Watkins of his separate funds used to purchase the property, plus half of the remaining marital equity in the property. The state court Order does not contain any of the traditional indicia of support, but is more in the nature of a

property settlement agreement. Accordingly, the debt cannot be held nondischargeable under §523(a)(5).

The Court must then analyze Watkins' claim of nondischargeability under 11 U.S.C. §523(a)(15). Under this statute, the creditor must prove initially that the debt is (1) not a debt nondischargeable under §523(a)(5); and (2) was incurred in the course of a divorce or separation. In re Smither, 194 B.R. 102, 107 (Bankr. W.D. Ky. 1996). Once this burden of proof is met, the burden shifts to the Debtor to prove either an inability to pay or that a discharge of the debt would result in a benefit to the Debtor that outweighs the detrimental consequences of a discharge to the creditor's spouse. Id.

Watkins met the first two elements of the test under §523(a)(15) and the Court must now determine Debtor's ability to pay the debt at issue. Under Smither, the Court is first required to determine the amount of the obligation that Watkins is seeking the Court to hold nondischargeable and the repayment terms and conditions. The Order of July 12, 2004 stated that the Debtor was to pay Watkins $42,000 over a term of four years beginning on April 7, 2003, that Watkins would execute a Quitclaim Deed conveying his interest in the property to the Debtor and that Debtor would execute a mortgage in the amount of $42,000 giving Watkins a lien.

Second, the Court must calculate the income of the Debtor and the value of any property retained after the bankruptcy. Smither, 194 B.R. at 108. The evidence at trial established that Debtor suffered a tremendous reversal of fortune since the parties' divorce. While she made between $80,000 and $143,000 during the parties' marriage, she has since suffered two serious accidents resulting in her total disability and an inability to work. She currently only receives

approximately $2,100 per month from social security and disability insurance. The disability insurance payment of $400 per month will cease after two years.

Third, the Court must ascertain the amount of reasonable and necessary expenses the Debtor must incur for the support of herself and her dependents. Smither, 194 B.R. at 108. The Debtor's monthly income from social security and her pension totals approximately $2,100. This amount is less than her monthly expenses of approximately $2,200. She also has an outstanding tax liability owed to the IRS for approximately $15,000. That debt is currently being deferred. While some of Debtor's expenses involve payment of some of her daughter's expenses, such as her cell phone, the Court finds that the Debtor does not live extravagantly and her expenses are reasonable.

Fourth, the Court is required to compare the Debtor's current assets and income with the reasonable and necessary expenses to see if the Debtor has the ability to fulfill her obligation to Watkins. Smither, 194 B.R. at 108. The Court finds that the Debtor does not have the current resources or ability to repay the debt. The Debtor went from being a high income earner during the marriage to being dependent on assistance from her parents and social security for her living expenses. There is no reason to believe that Debtor's income will increase in the future. She has no prospects for future employment. Debtor simply does not have the ability to repay the debt to Watkins.

In addition to not having the ability to repay the debt, Debtor has also proven by a preponderance of the evidence, that the discharge of the debt in issue would result in a greater benefit to her than the detrimental consequences to Watkins of nonpayment. See, Smither, 194 B.R. at 110. In making this determination the Court must review the parties financial status and standard

of living and determine which party would suffer more based on the Court's decision in the case. See, In re Molino, 225 B.R. 904, 907 (B.A.P. 6th Cir. 1998).

In making this determination, the Court reviews these factors: the amount of the debt and the payment terms; the current income and expenses of the debtor and the creditor; the current assets and liabilities of the debtor and the creditor; the amount of the debt to be discharged in the bankruptcy; the health, job skills, age and education of the debtor and creditor; the age and any special needs of the dependents of the debtor and the creditor; any changes in the financial conditions of the debtor and creditor since entry of the decree; whether the creditor is eligible for bankruptcy relief and whether the parties have acted in good faith in filing the bankruptcy and litigation of the 11 U.S.C. §523(a)(15) issue.  See, Smither, 194 B.R. at 111.  Many of the above factors have been previously analyzed in determining Debtor's inability to repay the debt. Both parties are disabled and have no future prospects of employment. Watkins, however, has a $300 per month surplus after paying his reasonable expenses. Debtor has no such surplus. Neither party possesses great assets, but it is clear that the discharge of the debt at issue is of far greater benefit to the Debtor than the burden on Watkins if the debt is discharged.

The final element is the good faith of the parties. Smither, 194 B.R. at 111. The Court finds that both parties demonstrated good faith in the litigation of this claim. While neither party fulfilled the terms of the state court's Order regarding execution of a Quitclaim Deed by Watkins and of a mortgage in the amount of the debt in Watkins' favor by the Debtor, both parties agreed to the sale of the farm and the futility of executing these documents. Neither party acted in bad faith.

The unfortunate accidents suffered by the Debtor and Debtor's resulting disability establish that the benefit of the discharge of this debt outweighs the detrimental consequences to Watkins.

Debtor does not have the resources nor the ability to repay the debt of $42,000 to Watkins. Having considered all of the factors of articulated in Smither and the balancing of the hardships of the parties, the Court determines that the debt is dischargeable.

## CONCLUSION

For all of the above reasons, the Court finds in favor of the Debtor Juanita Lynn Watkins on the Complaint Objecting to Discharge of Plaintiff Donald Ray Watkins. A Judgment incorporating the findings herein accompanies this Memorandum-Opinion.

UNITED STATES BANKRUPTCY COURT
FOR THE
WESTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JUANITA LYNN WATKINS | ) | |
| | ) | CASE NO. 05-11897 |
| Debtor(s) | ) | |
| | ) | |
| DONALD RAY WATKINS | ) | AP NO. 05-1077 |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JUANITA LYNN WATKINS | ) | |
| | ) | |
| Defendant(s) | ) | |

**JUDGMENT**

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that Judgment is entered in favor of the Defendant/Debtor Juanita Lynn Watkins on the Complaint Objecting to Discharge of Plaintiff Donald Ray Watkins. The debt of $42,000 owed by Debtor to Plaintiff is declared dischargeable.